Judge Underwood

dissenting, delivered his own opinion as follows :
I am opposed to all control over the lawful contracts of persons capable of contracting, which will orean give a different operation to the contract than that which the parties intended. All such interference is in my estimation a species of judicial legislation, and dangerous, because it circumscribes and thwarts the natural liberty of the citizen, compelling him to do things which he may be averse to do, and which he has never stipulated to perforin. Courts of justice should either enforce contracts according to their legal effect, or dissolve them where sufficient causes exist for so doing. They should never undertake to make a new contract for the parties. It seems to me, that so much of the opinion delivered in this case as requires the defendant in error to make John Wyat a party to his bill, so that he and Linconfelter may be compelled to contribute jointly is a violation of the plain principles which I have laid down, and therefore I dissent. As Í understand the facts of this case, Linconfelter and John Wyat executed separate covenants, binding themselves separately, to Kelly to compensate him in case George Wyat did not serve him a certain stipulated time, &c. George Wyat was no party to these written contracts. He was an infant,and therefore the covenants were voidable in res-peetto him, liad he signed them, and hence there was no good reason for his doing so. 1 look Upon the covenants of Linconfelter and John Wyat, therefore, as separate obligations in which each of them was bound as principal, and not as surety for George Wyat.— Indeed, neither of them could compel George Wyat, *342 hy law, to refund the amount which he might be-compelled to pay. I cannot therefore perceive the in the case of Hutchcraft, &c. vs. Shroot’s heirs, I. Monroe 208, which should govern this. That equity will sometimes equalize the burden among sureties by compelling all to contribute may be admitted, but that the Chancellor should consider persons separately bound in different contracts, as principals, under an obligation in equity, to contribute jointly to pay the demand, and would be justified in refusing relief against either, until the other was brought before the court, is a position I cannot admit. If he can do this, then he has power to make contracts for parties, not only without their assent, but in direct opposition to their intentions. Suppose Kelly had not lost his obligation on John Wya't, and had in the first instance filed his bill to set up the lost obligation on Linconfelter alone, could there be any ground to implead Wyat in Chancery,when there existed a plain and direct remedy at law against him? In that event Kelly, it seems to me, would be under no necessity to make Wyat a party. If he should do it, the only reason in support of the course, would be the interest of Linconfelter in getting contribution. If Kelly had not lost Linconfelter’s bond, and were to sue on it at law and recover damages, there is no pretext forsay-ing that he could make Wyat pay any part of them. Thus, according to the doctrine of the opinion, Kelly’s misfortune in losing Linconfelter’s bond, so that he is compelled to resort to Chancery in order to set it up, diminishes his burden one half, by throwing it on the shoulders of Wyat, who is compelled to pay half by a decree in Chancery when there is an expeditious remedy at law against him for the whole. But suppose the Chancellor has jurisdiction to bring Wy-at before him when his bond has not been lost, in order to compel him to make contribution, how ought the decree to be rendered? Shall it go jointly against both Wyat and Linconfelter for the whole, oi5 severally against each for half? If it goes against both for the whole and Linconfelter proves insolvent, then all is collected from Wyat with the costs of a suit in Chancery, when Kelly had an easy remedy at law, and thus Kelly and Wyat are thrown into chancery, and the litigation terminates By saddling Wyat with *343 the whole burden, justas it would have done at law. But Wyat’s condition may be rendered worse by the additional costs of the litigation, especially if felter should resist the recovery by denying his responsibility, whereby many depositions become necessary. If the decree goes against each for half and no more, then in case one fails Kelly, loses a moiety of his claim. When such novel consequences of tolerating the procedure pointed out and sustained by the opiuion, present themselves, I cannot help regarding the possibility of their happening, as a strong reason against connecting contracts in equity which are distinct at law.
Dissent.
Dissent,
But suppose Kelly should refuse to enforce the obligation he holds upon Wyat, does it belong to the Chancellor to make him do it against his will? I think the Chancellor has no such power. If I am right in regarding the contracts as altogether unconnected at law, then the release of the right of action against Wyat, would not discharge Linconfelter. The opin-'. ion delivered, tolerates the interposition of the Chancellor, and allows him to impose a liability upon an obligor against the will of the obligee, and by so doing, does in effect, make and enforce new contracts without the assent and against the will of the parties. The principle settled in the opinion, binds Wyat to aid Linconfelter by equal contribution, and this is done, not because the parties ever contracted for such a thing, but upon an equity which is supposed to arise from the relation subsisting between the parties.
When a bill is filed to set up a lost bond against the principal in the bond, I think the Chancellor has no discretion in prescribing the terms upon which he will grant relief. In such a case as the remedy at law is gone, I think it is the duty of the Chancellor to set up the bond, and to give the relief upon it which would be afforded at law, and not to travel into other matters which may result in thwarting the views, and changing the legal liabilities of the parties. Ifa defendant has an equity against the bond attempted to be set up, ne may rely on it; but I do not see how he can call in others to help him pay it when it is acknowledged that he alone is bound by it. As *344 Wyat and Linconfeller were seperate in their contracts, I see no reason to unite them in this suit.
Believing the opinion incorrect in requiring Wyat to be made a party, Í have deemed it proper to express the reasons for my dissent.